UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AMERICAN RIVER TRANSPORTATION CO., LLC** d/b/a ARTCO STEVEDORING | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-2673** |
| **M/V ORIENT RISE, her engines, tackle, apparel, etc.** *in rem* | **SECTION: "G"(3)** |

## ORDER AND REASONS

On March 21, 2019, Plaintiff American River Transportation Co., LLC ("Plaintiff") filed an *in rem* Complaint in this Court against Defendant *Orient Rise M/V* (the "Vessel") pursuant to Supplemental Admiralty Rule C.[1] The Vessel has three registered owners: Grace Way Shipping Ltd., Lucky Rise Pacific Ltd, and Tongli Shipping Pte Ltd (collectively, the "Vessel Owners").[2] On April 3, 2019, the Court granted a motion to intervene filed by Agri Port Services, LLC ("Intervenor").[3] On April 6, 2020, the Court granted a consent motion to stay the case due to the effects of the COVID-19 pandemic and complications caused by the Vessel Owners' operations being based in mainland China.[4] Currently pending before the Court is Plaintiff and Intervenor's "Motion to Lift Stay."[5] The Vessel Owners oppose the motion.[6] Considering the motion, the

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 39.

[3] Rec. Doc. 20.

[4] Rec. Doc. 67.

[5] Rec. Doc. 71.

[6] Rec. Doc. 72.

1

memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion.

## I. Background

On March 21, 2019, Plaintiff filed an *in rem* Complaint in this Court against the Vessel pursuant to Supplemental Admiralty Rule C.[7] In the complaint, Plaintiff alleges that on or about March 7, 2019, while the Vessel was at ARTCO Stevedoring's berth, the vessel lost its starboard anchor when its starboard anchor chain broke.[8] In the Complaint, Plaintiff requests that the Court recognize a maritime lien for necessaries in the amount of $1,200,000 plus any costs related to indemnity or any contingent liability, including a $7,500 per hour dockage charge that was continuing to accrue at the time the Complaint was filed.[9] On that same day, upon Court order, a warrant was issued for the Marshal of the Eastern District of Louisiana to arrest the Vessel.[10] On March 27, 2019, Plaintiff filed a First Amended Complaint, maintaining the same factual allegations and providing additional allegations regarding the amount of damages.[11]

On April 3, 2019, the Court granted a motion to intervene filed by Intervenor.[12] On that same day, Intervenor filed an Intervenor Complaint alleging that Defendant owed it $239,519.27 for services rendered to assist the vessel while it was unloading cargo.[13] On April 5, 2019, upon

---

[7] Rec. Doc. 1.

[8] *Id.* at 3.

[9] *Id.* at 5–7.

[10] Rec. Doc. 8.

[11] Rec. Doc. 13.

[12] Rec. Doc. 20.

[13] Rec. Doc. 21 at 2.

2

Court order, a warrant was issued for the Marshal of the Eastern District of Louisiana to arrest the vessel on behalf of Intervenor.[14]

On April 5, 2019, Plaintiff filed a Second Amended Complaint, maintaining the same factual allegations.[15] The Second Amended Complaint requested that the Court require security of at least $10,000,000 to cover the claims of Plaintiff and Intervenor.[16] On that same day, the Court granted a motion setting security in the amount of $10,000,000.[17]

On June 3, 2019, the Vessel Owners answered the Second Amended Complaint and the Intervenor Complaint.[18] The Vessel Owners also brought a counterclaim and a crossclaim against Plaintiff.[19] On June 17, 2019, the Vessel Owners filed a Third-Party Complaint and Rule 14(c) Tender against Crescent Towing & Salvage Co., Inc. ("Crescent"), *in personam*, and the Tug Mississippi, *in rem*.[20]

On March 30, 2020, the parties filed a consent motion to stay the instant case due to the effects of the COVID-19 pandemic and complications caused by the Vessel Owners' operations being based in mainland China.[21] On April 6, 2020, the Court granted the consent motion to stay

---

[14] Rec. Doc. 28.

[15] Rec. Doc. 36.

[16] *Id.* at 2.

[17] Rec. Doc. 34.

[18] Rec. Docs. 39, 40.

[19] *Id.*

[20] Rec. Doc. 42.

[21] Rec. Doc. 66.

and administratively closed the case.[22] On June 30, 2020, the Court conducted a status conference with the parties via videoconference.[23] After the status, the Court decided to temporarily keep the above-captioned matter stayed and administratively closed.[24] The Court also decided to allow the parties to conduct written discovery while the case remained stayed and administratively closed.[25] The Court required the parties to file a status report by August 14, 2020, to update the Court on whether the case should be reopened.[26] On August 14, 2020, the parties filed a Joint Status Report stating that the parties agreed for the case to remain stayed for an additional 45 days.[27]

On November 4, 2020, Plaintiff and Intervenor filed the instant Motion to Lift Stay.[28] On November 10, 2020, the Vessel Owners filed an opposition to the motion.[29] On November 20, 2020, with leave of Court, Plaintiff and Intervenor filed a supplemental memorandum in further support of the motion.[30]

---

[22] Rec. Doc. 67.

[23] Rec. Doc. 69.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] Rec. Doc. 70.

[28] Rec. Doc. 71.

[29] Rec. Doc. 72.

[30] Rec. Doc. 75.

## II. Parties' Arguments

### A.   *Plaintiff and Intervenor's Arguments in Support of the Motion*

Plaintiff and Intervenor move this Court to lift the stay and restore this matter to the Court's trial docket.[31] Plaintiff and Intervenor note that the events giving rise to this case occurred in March 2019.[32] Plaintiff and Intervenor recognize that COVID-19 caused disruption to litigation, but they assert that cases in this district are now moving forward to discovery and trial settings.[33] Additionally, Plaintiff and Intervenor note that two depositions were conducted during the stay without problems.[34] If any discovery issues arise, Plaintiff and Intervenor assert that they should be handled by this Court in the normal course of proceedings, and any additional stay is not warranted.[35]

### B.   *The Vessel Owners' Arguments in Opposition to the Motion*

In opposition, the Vessel Owners assert that the issues with experts and international travel which necessitated the entry of a stay order have not changed given the ongoing nature of the COVID-19 pandemic.[36] The Vessel Owners contend that "destructive testing" of the anchor chain that broke on March 7, 2019, is necessary for the Vessel Owners to defend their interests.[37]

---

[31] Rec. Doc. 71-1 at 1.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] Rec. Doc. 72 at 1.

[37] *Id.* at 3.

According to the Vessel Owners, "any inspections and/or testing of the anchor chain need to include all the parties and experts involved in concurrent London arbitrations."[38]

The Vessel Owners assert that Plaintiff and the Vessel Owners each retained expert metallurgists to provide an opinion regarding the cause of the broken anchor chain.[39] The Vessel Owners submit that before the onset of the COVID-19 pandemic, the experts made arrangements to complete destructive testing to determine the cause of the failure.[40] The Vessel Owners contend that those plans remain unfeasible with current travel bans and quarantines in place.[41]

The Vessel Owners submit that Plaintiff and Intervenor will suffer no substantial injury if the matter remains stayed because all issues were joined prior to the stay and the parties have proceeded with discovery during the stay.[42] Conversely, the Vessel Owners contend that they would be unduly prejudiced if the stay is lifted because they will be "precluded from moving forward with necessary expert discovery to mount a defense."[43] Finally, the Vessel Owners assert that any prejudice to the Court in continuing the stay will be slight because the chances of an amicable settlement will be greatly enhanced after conditions normalize and discovery can be completed in the normal course.[44]

---

[38] *Id*.

[39] *Id*.

[40] *Id*. at 3–4.

[41] *Id*. at 4.

[42] *Id*. at 5.

[43] *Id*. at 6.

[44] *Id.*

C. *Plaintiff and Intervenor's Supplemental Arguments in Support of the Motion*

In the supplemental brief, Plaintiff and Intervenor assert that the unavailability of the Vessel Owners' expert, who is located in London, is not a sufficient reason for a continued stay of this matter.[45] Plaintiff and Intervenor submit that the Vessel Owners have the anchor chain in their possession and could have it tested by an expert of their choosing in the United States.[46] Plaintiff and Intervenor argue that a continued stay of this matter is contrary to the intent of the Federal Maritime Lien Act ("FMLA").[47] Plaintiff and Intervenor assert that the FMLA was passed to encourage United States companies to extend credit to foreign flag vessels to promote commerce.[48] To fulfill this objective, Plaintiff and Intervenor assert that "Congress gave the U.S. supplier of necessaries a maritime lien to those in any way involved in the management of the vessel, a lien against the vessel regardless of whether the person asking was the owner, disponent owner, charterer, agent, or other manager."[49] Additionally, Plaintiff and Intervenor contend that "Congress gave the provider of services an enhanced ranking above all other creditors."[50] For these reasons, Plaintiff and Intervenor contend that they have a right to move this case forward.[51]

---

[45] Rec. Doc. 75 at 1.

[46] *Id*. at 1–2.

[47] *Id*. at 2.

[48] *Id*.

[49] *Id*. at 2–3.

[50] *Id*. at 3.

[51] *Id*.

### III. Legal Standard

In *Landis v. North American Co.*, the Supreme Court recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[52] The Supreme Court noted that "how this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[53] Therefore, a district court has "discretionary power to stay proceedings before it in the control of its docket and in the interests of justice."[54] Furthermore, a district court may exercise this discretionary power *sua sponte*.[55]

### IV. Analysis

Plaintiff and Intervenor move this Court to lift the stay and restore this matter to the Court's trial docket.[56] The Vessel Owners oppose the motion because they assert that the issues with experts and international travel which necessitated the entry of a stay order have not changed given the ongoing nature of the COVID-19 pandemic.[57] Specifically, the Vessel Owners point to expert testing that they contend cannot be completed due to the current travel restrictions.[58]

The Court finds that a continued stay of this litigation is not warranted. This matter has

---

[52] 299 U.S. 248, 254 (1936).

[53] *Id.* at 254–55.

[54] *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

[55] *See Begum v. Miner*, 213 F.3d 639, at *1 n.1 (citing *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 n. 1 (5th Cir.1999) ("we have held that the district court may *sua sponte* stay a suit as a form of abstention.")

[56] Rec. Doc. 71-1 at 1.

[57] Rec. Doc. 72 at 1.

[58] *Id*. at 3.

been stayed for approximately ten months at the request of the parties. The Eastern District of Louisiana has continued jury trials until after May 1, 2021. The Court is currently scheduling trials to begin in the late 2021 and early 2022. A continuance of the stay in this matter could result in this case not being scheduled for trial until late 2022. To the extent that the Vessel Owners need additional time to complete testing in this matter, there will be an opportunity for such testing after the stay is lifted. Furthermore, any discovery issues can be addressed by the Court after the stay is lifted. Therefore, the Court exercises its discretion to lift the stay.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff American River Transportation Co., LLC and Intervenor Agri Port Services, LLC ("Intervenor")  "Motion to Lift Stay"[59] is **GRANTED.**

**IT IS FURTHER ORDERED** that the parties must contact the Court's case manager by February 12, 2021 to conduct a scheduling conference in this case.

**NEW ORLEANS, LOUISIANA**, this __27th__ day of January, 2021.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[59] Rec. Doc. 71.